IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 19-160 |
| MARVIN PORTER | |

**MEMORANDUM ORDER**

Before the Court is Defendant's Emergency Motion for Compassionate Release Under the First Step Act. ECF 226. Defendant seeks compassionate release from his term of incarceration which he is serving at FCI-Morgantown, with a release date of September 14, 2023. https://www.bop.gov/inmateloc/ (last visited 04/21/21). The Government has filed a Response in Opposition to Defendant's motion. ECF 233. For the reasons set forth below, the Defendant's Motion will be denied.

**I. Background**

On November 14, 2019, Defendant pled guilty to one count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin and agreed to forfeit several firearms and ammunition. ECF 103. According to his plea agreement with the Government, Defendant stipulated that the type and quantity of controlled substance attributable to him for the purposes of § 2D1.1 of the Sentencing Guidelines was at least 700 grams, but less than one kilogram of heroin. ECF 101-1.

On August 12, 2019 during Defendant's sentencing hearing, this Court reviewed Defendant's offense conduct on the record as required by 18 U.S.C.A. § 3553. At that time, the Court noted that a Task Force led by the FBI, conducted an investigation into drug trafficking

activity in Braddock, and through intercepted communications, physical and electronic surveillance, and law enforcement interdictions, determined Defendant was involved in a conspiracy to distribute heroin and cocaine. ECF 145. Defendant was sentenced to serve a 60-month imprisonment term as a result of his participation in the conspiracy. ECF 200.

As noted above, Defendant is presently confined to FCI-Morgantown and his release date is September 14, 2023. In support of his motion for compassionate release, Defendant posits that his "extraordinary and compelling reasons" as required by the First Step Act (18 U.S.C. §3582(c)(1)(A)(i)) include: the coronavirus (COVID-19) pandemic "with multiple, more dangerous mutations" which public health experts recognize "is especially dangerous in the confines of crowded correctional institutions," coupled with his "uncontrolled hypertension[.]" ECF 226. Defendant further argues that he contracted COVID-19 while at FCI-Morgantown because of his inability to practice self-care while incarcerated, placing him at great risk for severe illness and even death. Id. Defendant also argues that a sentence of time served is sufficient to accomplish the goals sentencing in accordance with 18 U.S.C.A. § 3553.

In response to his request, the Government notes that it is Defendant's burden of prove that extraordinary and compelling reasons exist, warranting his early and compassionate release from prison. The Government further notes that Defendant present no documentary evidence (*i.e.* medical records) suggesting that Defendant suffers from uncontrolled hypertension. Thus, the Government argues that there is no basis for the Court to find extraordinary and compelling reasons. The Government also argues that compassionate release would not be appropriate under the Section 3553 factors.

**II. Standard of Review**

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) ("A federal court generally may not modify a term of imprisonment once it has been imposed.").

The First Step Act's amendment of 18 U.S.C. § 3582 provides an example of such specific authorization.[1] As amended, the First Step Act allows this Court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In addition, this Court must consider: (1) whether Defendant has exhausted the appropriate administrative remedies; (2) the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (3) whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[2]

**III. Discussion**

Turning to the instant case, Defendant must first prove to this Court that "extraordinary and compelling reasons warrant" a reduction in Defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A)(i). Defendant bears the burden of proving the existence of the extraordinary nature and/or compelling reasons which support such a reduction.

---

[1] Title 18 U.S.C. § 3582(c)(1)(A) is referred to as "the compassionate release statute," because it allows a court to modify a term of imprisonment if certain conditions are present. Historically, the presence of the conditions only permitted the Bureau of Prisons ("BOP") to bring a motion under the compassionate release statute. However, in 2018, the First Step Act modified the compassionate release statute and authorized a defendant to file his own motion for relief. First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018).

[2] Defendant has supplied the Court with documentary evidence that he had exhausted his administrative remedies. ECF 226-1. In addition, the Government indicated in its responsive brief that it did not contest that Defendant exhausted his administrative remedies. ECF 233. Thus, the Court will analyze and discuss the substance of Defendant's arguments for compassionate release.

Defendant argues that his extraordinary and compelling reasons consist of the COVID-19 global pandemic coupled with his "uncontrolled hypertension." Defendant explains that he became infected with COVID-19 while incarcerated at FCI-Morgantown due primarily to his inability to provide self-care in the correctional institution and because there were not enough protections in place to protect him. ECF 226. He further suggests that his uncontrolled hypertension places him at great risk of severe illness and even death from COVID-19.

However, as noted by the Government, other than Defendant's word that he has such a medical condition, no evidence was proffered to support such a finding by this Court. Moreover, the "Physical Condition" section of Defendant's presentence investigation report noted as follows:

> The defendant reported that he is in relatively good health. He reported that he has high blood pressure and takes 40 milligrams of Lisinopril per day as well as 10 milligrams of Norvasc per day, prescribed by Dr. Douglas Clough at UPMC Passavant Hospital in McCandless, PA.

ECF 145, ¶44.

Thus, even though there is a record of Defendant having high blood pressure (hypertension), this report clearly indicated it is controlled by Defendant's intake of a medication. No documentary evidence to the contrary was proffered.

Although the CDC has indicated that certain heart conditions "can make [a person] more likely to get severally ill from COVID-19[,]" (see, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ) (last visited 4/21/21), the CDC also specifically notes that there is mixed evidence as to whether hypertension is an underlying medical condition that can increase a person's risk of severe illness from COVID-19.

4

https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/underlying-evidence-table.html (last visited 4/21/21).

Moreover, Defendant in this case contracted COVID-19 while incarcerated at FCI-Morgantown and nowhere in his brief did he indicate that he suffered from a severe case requiring hospitalization. Thus, it is reasonable for this Court to infer that Defendant's bout of COVID-19 did not result in severe illness rising to the level of extraordinary circumstances and thus, requiring this Court to consider a compassionate release.

At this moment in time, zero inmates and only 1 staff member at FCI Morgantown are reported to have an active case for COVID-19. Thus, it appears as though Defendant has recovered from his own bout of COVID-19. For all of these reasons, the Court does not find that Defendant has presented the Court with compelling and extraordinary reasons in support of an early, compassionate release from prison.

In addition, the Court carefully considered the crime to which Defendant pled guilty at the time of Defendant's sentencing hearing on August 12, 2020. Specifically, the Court noted that Defendant's crime was indeed a serious one, but also commented on Defendant's excellent work history and noted the many letters the Court had received and reviewed from Defendant's friends, co-workers, and union members on his behalf attesting to his strong work ethic. The Court also found that Defendant had strong family support from his wife and three children – two of whom were college graduates and one who was enrolled in college at the time of the sentencing. After weighting the serious nature of the crime and attributes of Defendant, the Court decided to vary downward from the guideline range of 70-87 months imprisonment and chose to sentence Defendant to 60 months instead. Thus, applying the same Section 3553 factors

to Defendant's present motion, the Court finds nothing in the current motion to suggest that further downward variance is required.

### IV. CONCLUSION

For all of the above-stated reasons, Defendant's Motion for Compassionate Release is **DENIED.**

SO ORDERED, this 21st day of April 2021.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc:  All ECF Counsel of Record